(45 South. 273.)

No. 16,749.

DANIELS v. TAUBENBLATT.

In re XIQUES LEMORE CO., Limited, et al.

(Nov. 4, 1907. Rehearing Denied Jan. 20, 1908.)

EVIDENCE—IDENTITY OF PROPERTY.

    Plaintiff, claiming as owner movable property held by a third person asserting title thereto, is bound to identify such property as that owned by him, or his claim will be denied.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Replevin, § 282.]

(Syllabus by the Court.)

Certiorari from Court of Appeal, Parish of Orleans.

Action by M. S. Daniels against John Taubenblatt. Max Fleischer and others intervene. Judgment was modified and affirmed by the Court of Appeal, and interveners, the Xiques Lemore Company, Limited, and Sigmund Fleischer, applied for certiorari or writ of review. Judgments of Court of Appeal and district court amended and affirmed.

George Hitchings Terriberry, for applicant. Parkerson, Bruenn & Breazeale, for respondent Daniels. James Barkley Rosser, Jr., for respondent Kastor.

Statement of the Case.

MONROE, J. Plaintiff caused four car loads of staves to be seized, alleging:

"That on November 24, 1904, he made a contract with John Taubenblatt, of Memphis, Tenn., for French claret staves; * * * that said four car loads are his property under his said contract, and bear his trade-mark, 'a Maltese cross, D encircled,' and are worth at least $1,-000; that the said John Taubenblatt, after selling said staves to petitioner, is attempting to deliver them to some one else; and that petitioner is entitled to possession thereof."

Xiques Lemore Company, Limited, intervened, alleging that it is the owner of two of the car loads of staves referred to in plaintiff's petition; the same having been bought, paid for, and delivered to them; Max (erroneously called Sigmund) Fleischer, also intervening, makes a similar claim as to another car load; and Hugo Kastor in like manner claims the remaining car load, save 170 staves, which he alleges bear plaintiff's mark, and to which he disclaims title.

The district court found that the staves claimed by Kastor had been riven and sold to him by John Benchina, and sustained his demand. It also sustained the demands of the other interveners, on the ground that, though the staves claimed by them were part of a lot which had been riven by Taubenblatt for the plaintiff, and upon which the latter had made some advances, they had remained in Taubenblatt's possession and had been sold and delivered by him to said interveners. Plaintiff having appealed, the Court of Appeal amended the judgment of the district court by rejecting the demands of Xiques Lemore Company, Limited, and Fleischer, and otherwise affirmed the same. Thereupon those interveners applied to this court for writs of certiorari or review, and the case was ordered up. After the return had been made, plaintiff, through his counsel, appeared in this court by a pleading in which he asks that the judgment of the Court of Appeal be amended by rejecting the demand of Kastor, and, as thus amended, affirmed.

It appears from the evidence that in September, 1903, Taubenblatt made a written contract with Fleischer whereby he agreed to deliver 325,000 staves, not later than August 15, 1904, and in accordance with which Fleischer was to advance about 50 per cent. of the price as the staves were "taken up"; that is to say, Taubenblatt was to notify

Fleischer whenever he had as many as 50,-000 staves ready in the woods, whereupon Fleischer was to count, inspect, and brand them, which is the definition given of the term "taken up." It further appears, however, that Fleischer made advances beyond the requirements of his contract, and that just before the transaction out of which this litigation arises Taubenblatt owed him more than $3,000, to cover which, as we think, Fleischer was endeavoring to obtain staves, and as against which the staves obtained by him, including those here in controversy, were credited, leaving Taubenblatt still indebted in a sum exceeding $1,300.

The contract with plaintiff was made in 1904, and called for 500,000 staves, to be delivered not later than August 31, 1905. Of the number called for plaintiff avers that there had been "taken up" 471,000, of which but 423,000 had been actually shipped to and received by him. From the testimony of Panushka and Winkler (his manager and foreman), by whom the work was done, it appears, however, that whilst 471,000 staves were counted in the woods, and whilst, perhaps, proportionate advances were made on that number, about 15 per cent. or say 70,-000, were not branded, either because they were lying in water at the bottom of the cribs or because they were so stacked as to be inaccessible or for some other reason.

In April, 1905, Taubenblatt contracted with Xiques Lemore Company, Limited, to deliver 130,000 staves not later than October 1, 1905, and we conclude from the evidence that he practically complied with his contract. November 3, 1905, he wired the company as follows:

"Can buy 3 cars, 42, at 87 doll. and 5 cars, 36, at 77, very good staves. Shall I buy; answer."

Which means, I can buy 3 car loads of staves, 42 inches long, at $87 per 1,000, and 5 car loads, 36 inches long, at $77 per 1,000, etc. Whether he was instructed to buy the staves referred to in his telegram does not appear; but he testifies that they were not the staves here in controversy, and it does appear that, after the shipment of the staves in controversy, consigned to Xiques Lemore Company, Limited, to wit, on December 15, 1905, that company paid him $1,500 cash on 5 car loads of staves, including those so consigned.

The other intervener, Kastor, as he alleges, acquired his staves under a contract with a man named Benchina (who is shown to have been engaged in getting out staves in the part of the country in which defendant was working, but is not shown to have been in any way connected with defendant), and he paid for them according to his contract. All the staves in controversy were shipped in November and December, 1905, consigned to the interveners, respectively, by whom, on the arrival of the goods in New Orleans, the freight was paid and receipts duly taken, which receipts are filed in the record. Kastor testifies that his bill of lading was surrendered to the railroad company, which we take to be the usual custom, and which course, we imagine, was pursued by the other interveners, though their counsel, in his argument, seems to refer to the receipted freight bills as bills of lading. Thereafter—that is to say, after the staves consigned to the interveners had reached their destination, and after the interveners had accepted and paid the freight on them—plaintiff, who happened to be in New Orleans, having some reason to believe that they were the staves which had been "taken up" for his account, and upon which he had made advances, caused them to be seized as his property. Thereupon Kastor admitted that among the staves consigned to him there were 170 bearing plaintiff's brand, to which he disclaimed title; the fact being that the waybill in his case calls for exactly 170 staves less than were actually on the car. The other interveners asserted title to all the staves contained in the cars consigned to them; but on the trial

it was admitted by Fleischer that of the 7,000 staves consigned to him there were 705 which bore plaintiff's brand, to which plaintiff was entitled, and by Xiques Lemore Company, that of the 8,738 staves consigned to it 27 bore the plaintiff's brand and were at his disposal.

The testimony offered in support of the seizure shows that plaintiff found in the several consignments certain staves bearing his brand; that in the consignment to Kastor he found others, the ends of which had been sawed off, from which he inferred that they had borne his brand; and that in the consignment to Fleischer he found others, his brand upon which had been covered with paint. Neither he nor any witness examined on his behalf was willing to state how many staves bore his brand, how many were newly sawed, or how many had the brand painted. Upon the other hand, from the evidence offered on behalf of interveners, it appears that none of the staves consigned to Kastor or to Xiques Lemore Company, save as admitted by them, were branded at all, and that all the staves consigned to Fleischer, save as admitted by him, were branded "S. F.," which is the brand of S. Fleischer, for whom Max Fleischer bought them; and the evidence, taken as a whole, fails to identify the staves said to have been newly sawed off (the number of which is not even estimated), or those which were not branded, with any that had been "taken up" by plaintiff. There is no evidence in the record to indicate that either Xiques Lemore Company or Kastor acted otherwise than in good faith; the fact that a few staves bearing plaintiff's brand were included among those consigned to them being a matter for which they were in no wise responsible, and which was fully explained as a thing not unlikely to occur. In fact, though plaintiff testified that he had never, to his knowledge, received staves bearing the brands of others, it was shown by his own witnesses that he had had in his yard for more than a year several hundred bearing the brand of Sigmund Fleischer, which had been set aside, but never returned, and of which the owner had never been notified.

Fleischer explains the situation, so far as he is concerned, as follows:

"I went and asked him [Taubenblatt] for an explanation as to how Mr. Daniels' staves— that is, some of them—were in my car, and to give me an explanation, and also to write to Mr. Daniels; and he and his foreman told me that they had a string of cars in the freight yard, and that they had 700 or 800 pieces of my staves in front of the car that he loaded for Mr. Daniels, and that he loaded my staves on Mr. Daniels' car, and to indemnify me for them he would load as many of Mr. Daniels' staves on my car."

This testimony is corroborated to some extent by Taubenblatt, who admits that he gave Fleischer a letter to Daniels, though he speaks of an exchange of staves as having been made as between consignments to Daniels and Xiques Lemore Company. Inasmuch, however, as Xiques Lemore Company received only 27 of Daniels' staves, whilst the number said to have been exchanged appears to have been considerably larger, it may be that Taubenblatt was mistaken as to the parties, the more particularly as he testifies positively that the staves shipped to Fleischer from Trail Lake (where those consigned to him came from) were his staves; and there is no doubt that, save those bearing plaintiff's brand, they bore his brother's brand. We find in the record the following admission, to wit:

"It is admitted that, with the exception of the staves bearing the trade-mark of Daniels, interveners have shipped the staves away from the city of New Orleans and sold them, and that they hold those marked with a maltese cross, with D in a circle, at the disposal of the plaintiff herein."

## Opinion.

The conclusions reached upon the questions of fact are decisive of the case. The burden of proof is upon the plaintiff to show that the staves claimed by him are his property; and that, in our opinion, and for the reasons

assigned in the foregoing statement and finding, he has failed to do, save to the extent of the admission last above quoted. The trial judge, holding that the staves had been riven · for plaintiff, and that, under his contract and under the law of Mississippi he might, perhaps, be entitled to a lien or privilege on them, reserved his rights in that respect. He also gave plaintiff judgment for the staves not claimed by interveners, "to wit, 170 staves, more or less, bearing the mark 'Maltese Cross, with capital D in center,' found in car No. 21674, St. L. & S. W. R. R.," being the branded staves found in the lot consigned to Kastor. As we have, however, been differently impressed with the evidence adduced upon the question of the identity of the property, and fail to find therefrom that the staves claimed (with the exceptions mentioned) were riven for plaintiff, we can make no reservation in his behalf. For the same reason, however, that he was awarded the 170 branded staves found in the consignment to Kastor, we are of opinion that he should be awarded the 705 found in the consignment to Fleischer, and the 27 found in the consignment to Xiques Lemore Company, Limited. It is true that the two last-mentioned interveners did not originally disclaim title to those staves; but in the admission above quoted and mentioned they place them at the disposal of the plaintiff, and by virtue of that admission plaintiff is entitled to recover judgment for them. In view of the conclusion as thus expressed upon the question of fact, it becomes unnecessary to inquire what the plaintiff's rights might have been quoad the interveners as purchasers in good faith and in actual possession, if it had been shown that the staves here seized were the identical staves which had been counted or estimated by him, and upon which he had advanced his money.

It is therefore ordered, adjudged, and decreed that, in so far as the judgment of the Court of Appeal rejects the demands of the interveners, Sigmund Fleischer and Xiques Lemore Company, Limited, and condemns them to pay costs in the district court, the same be annulled and reversed; and it is now ordered that the judgment appealed from be amended, to the extent that said interveners be decreed the owners of the staves claimed by them, less 705 staves bearing plaintiff's brand found among those claimed by Fleischer, and 27 staves similarly branded and found among those claimed by Xiques Lemore Company, Limited, of which staves plaintiff is decreed to be the owner, entitled to possession, and to the further extent that the reservation in favor of plaintiff as contained in said judgment be stricken out and denied.

It is further adjudged that, as thus altered and amended, said judgments of the Court of Appeal and the district court be affirmed; the costs of this proceeding to be paid by plaintiff.